## Louisville & Nashville Railroad Company v. Wright.

(Decided November 12, 1921.)

### Appeal from Franklin Circuit Court.

1. Master and Servant—Negligence—Failure to Exercise Judgment. —The failure to exercise the best judgment in an emergency is not evidence of negligence, though the error be fraught with serious results, since one acting in a sudden crisis is not required to exercise that deliberate judgment which time for reflection affords.

2. Master and Servant—Negligence.—An engineer of a steam engine upon hearing a cry or scream, but not knowing its cause, nor from whence it comes, is not compelled immediately to stop his engine, and where he (the engineer) left his seat to ascertain the cause of such cry and discovered that his fireman had been caught between the cab and tender, while the engine was passing from a siding on to the main track and he attempted to extricate the fireman from this perilous position, failing in which he returned immediately to his seat, stopped the train and caused it to back, thereby releasing the fireman: Held, that in so doing he was not negligent in failing to stop the train as soon as he heard the cry.

3. Master and Servant—Conduct of Engineer.—A railroad company cannot be held liable because its engineer failed to choose or adopt a different course from the one which he did adopt, provided he did not fail to exercise ordinary care in so doing, and acted in good faith and in accordance with his best judgment under the circumstances.

4. Master and Servant—Persons Acting in Emergency.—Persons who have to act in a sudden emergency are not to be judged in the light of later events, but are to be judged under the circumstances by the standard of what a prudent person would have been likely to do under the same circumstances.

5. Appeal and Error—Former Appeal.—Where upon a former appeal a reversal was ordered because of an erroneous instruction and the opinion expressly stated that all questions not decided were left open, this court, upon a second appeal, is not precluded by the first opinion from ordering a directed verdict where, the entire record considered, it is manifest that such should be the order.

GUY·H. BRIGGS, ASHBY M. WARREN and BENJAMIN D. WARFIELD for appellant.

J. P. HOBSON & SON, HAZELRIGG & HAZELRIGG and LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

In 186 Ky. 498, 217 S. W. 1016, will be found the opinion on the first appeal of this case and to which reference is made for a more detailed statement of the facts and occurrences out of which this action arose.

Appellee was the fireman on the first of two engines attached to a freight train proceeding from Ravena to Neon. While standing between the engine and tender, with his right foot resting upon a part of the engine he sustained certain serious and permanent injuries by being caught between the tender and the engine upon which he was employed, as the same was leaving the siding at Mayking to enter the main track.

A judgment for appellee on the first trial was reversed because the court erroneously instructed the jury upon the question of defective appliances, a matter not pleaded. Upon the return of the case the petition was so amended as to cover the point omitted in the original pleadings, but on the second trial there was no evidence of defective appliances and the case was submitted to the jury solely upon the question of whether appellee's injuries were occasioned by the engineer's negligence. The issue submitted to the second jury was not passed on in the former opinion.

The boiler of the engine extended back almost even with the end of the cab and from the engineer's seat on the right hand side of the engine he could not see the fireman on the opposite side. When appellee was caught be-

tween the tender and the engine his screams attracted the attention of the engineer, who left his seat and came to appellee. The engineer endeavored to extricate appellee from his perilous position, but after failing so to do he returned to his seat, and gave a stop signal, which was immediately followed by a signal to back. About one and one-half minutes expired between the time the engineer left his seat and when he returned to give the stop signal. It is the theory of appellee that as the train was moving on to the main track the front engine shut off steam and as the second engine was working steam, the slack between the cab and the tender was taken up, catching appellee and at a time when the engine was still on the straight track of the siding. Thus it is argued that had the engineer immediately stopped the train when appellee screamed the injuries would not have been sustained, as the engine had not then entered the curve leading from the siding to the main track. In other words, it is contended the engineer should have stopped his engine when he first heard the scream; or at least have done so immediately upon seeing appellee's predicament, and because of his failure so to do he was guilty of such negligence as entitles appellee to recover in this action.

The first engineer says his engine was under steam and the second engine was not working steam. The train was moving at the rate of two or two and a half miles an hour at the time of the accident. When appellee was first caught the engine was about one hundred and fifty feet from the switch target and in the space of a minute or a minute and a half, at the rate it was going, the engine would have covered the distance between the point where the appellee was caught and the switch.

There is no precedent negligence involved here, the sole question being whether the engineer of the first engine was guilty of such negligence, under the circumstances detailed, as entitles appellee to recover damages for the injuries sustained. As said in the first opinion:

"No one is required to act in an emergency such as this except in good faith, and in accordance with his best judgment under the circumstances as they then appeared to him, provided he did not fail to exercise ordinary care. . . . "

The failure to exercise the best judgment in an emergency is not evidence of negligence, though the error be fraught with lamentable results, as one acting in a sudden

crisis is not required to exercise that deliberate judgment which time for reflection affords. Whether the one or the other method should have been adopted by the engineer in trying to relieve appellee of his situation was, under the circumstances, a matter for the exercise of the engineer's judgment. For an error in its exercise neither he nor appellant is responsible.

The position of the engine and the distance from the switch at the time appellee became fastened between the cab and the tender are clouded in doubt. Appellee insists that when the slack was taken up he was so wedged between the cab and tender that he could not be released, but it was not until he was being pulled through the curve leading to the main track that his injuries were sustained, and this occurred after the engineer had seen his plight, and that he was not released until the engine straightened out on the main track. The engineer on the other hand says that after he tried to release appellee he gave the stop signal and then caused the train to back a distance of approximately forty feet, and thus appellee was released. He says he did not pull appellee through the curve, that had he done so instead of backing as he did it would have crushed appellee more. Backing the train was, in his opinion, the quickest way to effect appellee's release because the acute part of the curve was in front of him. Thus, according to the testimony of the engineer, he did exactly what appellee says he should have done, to-wit, stopped or backed the train before it entered the curve. The statements of the witnesses on this vital point are irreconcilable. But disregarding the evidence for defendant and accepting that of plaintiff as true, even now, looking back upon the situation, with time to reflect, it is impossible to say which method would have been more efficacious to release appellee and therefore there was no evidence of negligence. The engineer was not called upon to stop his engine immediately upon hearing the cry, but having discovered appellee, fastened as he was, we are unable to say which would have been the quicker or wiser course to have pursued, viz.: to stop and back the train or to go forward. It is not certain that the adoption of a method different from that employed by the engineer would have prevented appellee's injuries. A serious situation confronted the engineer, immediate action was necessary and in the suddenness of the emergency he did probably what most any one else would have done, viz.: try to extricate his companion. Had he failed

to make the attempt and instead had stopped and reversed the engine we are not certain appellee would not have sustained similar or even worse injuries and then appellee might, with equal plausibility, have complained the wrong course was pursued. That the engineer did what he considered the best thing to be done cannot be denied. Appellant cannot be held liable merely because its engineer failed to choose or adopt a different course and one which, after the injury had resulted, might seem to have been for the better.

In circumstances of imminent danger ordinarily prudent men frequently act without prudence, and it is only the unusual and exceptional man that can be relied upon under such circumstances to retain his presence of mind. The law imposes no fixed rule of conduct upon one who is suddenly confronted with impending danger such as was appellant's engineer, and who is compelled to act not by the dictates of care and reason but by the instincts of preservation of human life. Persons who have to act in a sudden emergency are not to be judged in the light of later events, but are to be judged under all the circumstances of the case by the standard of what a prudent person would have been likely to do under the same circumstances.

Paraphrasing the language of this court in L. & N. R. R. Co. v. Molloy's Admr., 122 Ky. 219, 91 S. W. 685, it is immaterial that if the engineer had followed some other course the injury to appellee could have been avoided, provided he used such means and acted in such a manner as a person of ordinary prudence, placed in a similar position, might reasonably have so acted.

The foregoing views are in accord with the great weight of authority in this country as evidenced by the following illustrative cases.

Where the motorman of an electric car saw a boy riding on the steps of a steam railroad car approaching him on a parallel track, and there not being sufficient space between the tracks to enable the cars to pass without injuring the boy in his then position, the court in Ackerman v. Union Traction Co., 205 Pa. 477, 55 Atl. 16, in affirming a non-suit, said:

"With a clear understanding that the boy would be injured unless he got out of the way of the electric car, the motorman called and motioned to him to jump off or climb on the bumper. Possibly under the circumstances it would have been better to stop the car and thus

lessen the injury, than attempt to avert it altogether; but since he was confronted by a sudden and unexpected danger, and had but a moment in which to act, the motorman cannot be held liable for failure to see and follow what might appear on reflection to have been the wiser course.''

In Hughes v. Oregon Improvement Co., 20 Wash. 294, 55 Pac. 119, it appears a fire had broken out in a mine, and plaintiff's intestate, who was killed, might have been saved if the fan of the mine had not been stopped, the court, in holding that the defendant was not liable for the stopping of the fan, said:

''The evidence discloses that, at the time the fire was discovered by the men upon the outside of the mine, they were suddenly placed in a situation demanding immediate action, and that in the excitement and confusion occasioned by the discovery of the fire, and peril of the men below, and not knowing the precise location of the fire, they decided to do, and did do, what seemed to them best at the time. If what was done was not the best thing that could have been done, it nevertheless cannot be deemed an act of negligence but must be a mere error of judgment, for which the company cannot be held responsible.''

Where one of a hand car crew was killed, and the question was as to the negligence of the defendant's foreman when he saw a train approaching, the court in Gumz v. Chicago, St. P. & M. R. Co., 52 Wis. 10, N. W. 11, said:

''It may be that the section foreman had the option of a safer course than the one he adopted, but, even then, we should not impute negligence to such mere error of judgment. Such mere error of judgment does not have within it the elements of negligence. We conclude, therefore, that where there are two or more different lines of action, any one of which may be taken, and a person with ordinary skill, in the presence of imminent danger, is compelled immediately to choose one of them, and does so in good faith, the mere fact that it is afterwards ascertained by the result that his choice was not the best means of escape cannot be imputed to him as negligence.''

To the same effect see Bishop v. Belle City St. Rwy. Co., 92 Wis. 139, 65 N. W. 733; Stalbeman v. Atlantic Ave. R. Co., 155 N. Y. 511, 63 A. S. R. 698, 50 N. E. 277; Floyd v. P. & R. Co., 162 Pa. 29, 29 Atl. 396.

We fail to find anything indicative of negligence on the part of the engineer, but if there was any apparent

negligence in the method adopted by him in attempting to relieve appellee from his dangerous position, it was the act of a man in emergency saving human life which was in peril, therefore, the circumstances considered, the engineer was not negligent.

Appellant was not responsible for the position assumed by appellee on this unfortunate occasion. This unusual accident was fraught with disastrous results; it left appellee a permanent cripple and a jury awarded him damages in the full sum sought in his pleadings. But notwithstanding the seriousness of the injuries sustained by appellee, a verdict in his favor cannot be upheld in the absence of proof of negligence on the part of appellant and we are forced to the conclusion that the record wholly fails to show wherein the engineer was negligent.

Counsel is in error in assuming that is was settled on the first appeal that appellee's proof was such as required the submission of the case to a jury. A reversal was ordered solely because of error in instructing the jury on defective appliances, an issue not pleaded, and it was stated that all questions not expressly decided were left open. The question of a directed verdict was not discussed. The statement in the opinion that an instruction given by the lower court did not correctly advise the jury as to the law cannot be construed as holding that the case was for the jury. The main proof on the first trial had to do with a defective shackle bar and the court could not know what turn the case would take upon a retrial, under amended pleadings, hence could not well have ordered a directed verdict.

Matthews' Admr v. L. & N. R. R. Co., 130 Ky. 551, 113 S. W. 459, relied upon by the appellee, grew out of facts similar to those presented by the present record, but our conclusions in this case do not militate against that decision, because there the verdict favored the company and, of course, the appealing plaintiff could not complain of the court's refusal to peremptorily instruct the jury for defendant, if indeed such a motion was made.

Satisfied as we are that the court erred in refusing to give a directed verdict for appellant the judgment is reversed for further proceedings consistent herewith.

Whole court sitting.