Fitzpatrick *v.* Pralon Cleaners and Dyers,
Appellant, et al.

Argued November 10, 1937.

Before KEL-
LER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,
JAMES and RHODES, JJ.

*Nathan Silberstein,* with him *Leon E. Sperling, Abraham L. Freedman* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Lynn L. Detweiler,* of *Detweiler & Detweiler,* for appellee.

OPINION BY PARKER, J., December 17, 1937:

The plaintiff has a judgment against the original defendant in an action in trespass for damages to plaintiff's car resulting from a collision with a truck belonging to that defendant at a street intersection. The defendant has appealed and complains of the refusal of his motion for judgment n. o. v. He contends that the court below should have declared as a matter of law that the driver of defendant's car was not negligent and that the driver of plaintiff's car was guilty of contributory negligence.

We will, as we are required to, review the evidence in a light most favorable to plaintiff, resolving all conflicts therein in his favor and giving him the benefit of every fact and inference of fact which may reasonably be deduced from the evidence *(Guilinger v. Penna. R. R. Co.,* 304 Pa. 140, 155 A. 293).

Chestnut Hill Avenue runs east and west and has a total width of fifty feet and a width of twenty-six feet between curbs. Seminole Avenue coming from the south meets the first named avenue at right angles and comes to a dead end. Sem-

inole Avenue has a width of sixty feet, with thirty-four feet between the curbs. As Seminole Avenue leads south from Chestnut Hill Avenue it rises by a seven per cent grade for one hundred feet, then "flattens out" for a short distance and again ascends, reaching a summit two hundred and forty feet south of Chestnut Hill Avenue. There is a stone wall about ten feet in heighth close to the street line on both avenues at the southeast corner of the intersection, shutting off the view of those turning that corner.

On December 23, 1935 at about 3:30 P. M. plaintiff's Lincoln car was being driven westerly on the north side of Chestnut Hill Avenue, the driver intending to turn left and south on Seminole Avenue. At the same time the defendant's delivery truck was approaching the intersection from the south on Seminole Avenue, coming down grade and intending to turn right and east on Chestnut Hill Avenue. If each had proceeded as intended neither would have crossed the proper path of the other. The weather was cold; it had started to freeze at about noon so that there was "a film of ice all over the streets". The driver of appellant's car testified: "Q. Wasn't there ice all over the streets? A. No. Q. Generally all over the city? A. No. Q. Wasn't there ice at the top of the hill? A. Yes. Q. There was ice all the way down that hill? A. That's right."

When plaintiff's driver was about at the line of the east curb of Seminole Avenue he saw appellant's truck one hundred feet to the south and he then proceeded in second gear at a rate of three or four miles per hour. As he continued to move westward at the same rate, he saw appellant's truck within ten feet of his car, skidding down the hill toward him and apparently out of control. Before plaintiff's driver had an opportunity to turn south and when he was still on the north side of Chestnut Hill Avenue and about ten feet into the intersection, the truck collided with the Lincoln and seri-

ously damaged it. The driver of the truck admitted that when he was about fifty feet south of the corner he saw the Lincoln which then extended about three feet into Seminole Avenue, that he applied his brakes, that the truck skidded, out of control, the entire distance until it collided with the Lincoln. The truck was not equipped with chains at the time. While plaintiff's driver could not state the rate at which the truck was travelling when he first saw it, the jury could have inferred that it was coming rapidly for while the Lincoln was travelling ten feet at three or four miles per hour, the truck travelled one hundred feet.

Was there sufficient evidence to sustain a finding by the jury that the driver of the truck was negligent? "The skidding of an automobile does not of itself establish or constitute negligence. It was incumbent upon the plaintiffs to prove that the skidding resulted from the negligent act of defendant": *Hatch v. Robinson,* 99 Pa. Superior Ct. 141. Also see *Schoepp v. Gerety,* 263 Pa. 538, 107 A. 317; *Johnson v. American Reduction Co.,* 305 Pa. 537, 158 A. 153; *Riley v. Wooden,* 310 Pa. 449, 165 A. 738. The absence of chains does not as a matter of law, under ordinary circumstances, constitute negligence: *Wertz v. Shade,* 121 Pa. Superior Ct. 4, 182 A. 789. "While a finding of negligence may be based on the failure of an automobile driver to equip his machine with chains, the absence of chains does not show negligence as a matter of law under ordinary circumstances": *Geiger v. Dowdy,* 111 Pa. Superior Ct. 485, 491, 170 A. 420.

We have here not only the fact that the car skidded, but also additional facts sufficient to support a finding by the jury that the skidding was due to the negligent operation of the truck by defendant's driver. The jury might well have concluded that since the streets were covered with a film of ice the driver did not use due care in controlling the speed of his car. He admits that

the road was icy at the top of the hill and that the same condition continued to the intersection. They could have found that the driver of the truck started down this hill at a rate of thirty or forty miles per hour without chains; that he could not control the truck; that he put on his brakes, locking the wheels and then skidded a distance of more than fifty feet when he collided with the Lincoln with such force that he did serious damage to it. He was approaching the dead end of a street. If we accept plaintiff's testimony, the operator of the truck when he was one hundred feet from the crossing could have seen the Lincoln, then committed to the crossing, and in a situation where the Lincoln had the right of way, but he did not see the Lincoln, he states, until he was fifty feet from the corner when he applied his brakes locking the wheels.

The driver of the truck was bound to assume that there were other users of the highway and that he was operating a heavy machine capable of inflicting severe damages on others if not properly controlled, and that there was danger of skidding due to the weather conditions. This dangerous situation necessitated a corresponding amount of care on the part of the driver. Excessive speed can always be shown by the circumstances: *Moquin v. Mervine,* 297 Pa. 79, 146 A. 443. In fact the determination of what speed is excessive depends upon such circumstances. The jury had a right to consider the nature and course of the skidding, the absence of chains, the condition of the pavement, the speed of the truck, the manner in which the truck was operated and the nature of the intersection. The question of the negligence of the driver of the truck was clearly for the jury under the circumstances detailed.

Was plaintiff's driver guilty of contributory negligence? It seems plain to us that the question was for the jury. Plaintiff had the right of way for he was on defendant's right, and in addition, he had arrived at the

intersection a substantial distance in advance of the defendant's truck. The plaintiff's driver was proceeding at a low rate, three or four miles per hour. Seminole Avenue came to a dead end so that the respective paths of the Lincoln and the truck did not cross. Even if the driver of the truck had wished to turn west, there was ample room to pass as the Lincoln was only ten feet inside the east curb of Seminole Avenue when the collision occurred and the paved portion of that street was thirty-four feet in width. In any event, the plaintiff had the right of way.

Appellant urges as a basis for holding plaintiff's driver guilty of contributory negligence as a matter of law that the driver of the Lincoln should not have moved forward when he saw the truck skidding and out of control. The answer is that when the evidence is viewed in a light favorable to plaintiff we find that plaintiff's car was then committed to the crossing and that the driver of the Lincoln did not observe the skidding of the truck until it was only ten feet away. In a fraction of a minute it was upon him. The plaintiff's driver was confronted by a sudden and unexpected danger and had but a moment in which to act. Under such circumstances, he could not be held liable for negligence even though he had failed to see and follow what might have appeared on reflection to have been the wiser course: *Phillips v. People's Passenger Rwy. Co.*, 190 Pa. 222, 42 A. 686; *Ackerman v. Union Traction Co.*, 205 Pa. 477, 55 A. 16; *Wingert v. P. & R. Ry. Co.*, 262 Pa. 21, 104 A. 859.

It is also suggested by the appellant that the testimony of plaintiff's driver as to the position of the Lincoln just before the collision was contradictory and that a construction of such testimony which would convict plaintiff's driver of contributory negligence should be adopted by the court. There was a slight confusion upon the part of the driver in stating the relative loca-

tions of the wall, the street line and the curb line. After having stated the facts in direct examination as we have assumed them to be, he confused the distances somewhat on cross examination. We do not regard this as fatal. There was no evidence of any wilful misstatement of fact. The discrepancy was not serious and it was therefore for the jury to reconcile the conflicts and determine which should prevail: *American Rwy. Exp. Co. v. Crane,* 90 Pa. Superior Ct. 422; *Wolf v. Spencer,* 282 Pa. 425, 128 A. 80. In addition, the original statement of the driver of the Lincoln was supported by defendant's witness, the driver of the truck. The question of contributory negligence was for the jury.

Judgment affirmed.