# Lehigh Valley Railroad Company, Appellant, v. The Public Service Commission of the Commonwealth of Pennsylvania.

*Public Service Commission—Roads and highways—Railways— Public roads—Act of February 19, 1849, P. L. 79—Order for reconstruction and widening of highway—Railway bridge over public road.*

Under the 13th section of the Act of February 19, 1849, P. L. 79, 85, it was made the duty of railroad companies, whenever it was necessary to change the site of any portion of any turnpike or public road, to cause the same to be reconstructed forthwith, at their own proper expense, on the most favorable location, and in as perfect a manner as the original road.

Where it appears that a railroad company in constructing its railway over a public road had narrowed and introduced curves into the highway, both of which produced a serious element of danger to the public, the Public Service Commission properly required the railroad company to do a large part of the work necessary to eliminate the dangerous condition, and to bear approximately sixty per cent of the total cost of the work, pursuant to article V, section 12, of the Public Service Company Law, as amended July 17, 1917, P. L. 1025.

Argued December 3, 1923. Appeal, No. 22, March T., 1922, and No. 15, March T., 1924, by Lehigh Valley Railroad Company, from order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket, No. 2904, in the matter of the investigation by the commission on its own motion of dangerous condition of crossing below grade in the Borough of Duryea, Luzerne County. Before ORLADY, P. J., PORTER, HENDERSON, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Investigation by the commission, on its own motion, of the condition of a crossing, below grade, at a point where Main Street in the Borough of Duryea, Luzerne County, and the tracks of the Wilkes-Barre Railway

234 LEHIGH VALLEY R.R. CO., Appel., v. PUB. SER. COM.

Statement of Facts—Opinion of the Court. [82 Pa. Superior Ct.

Company, located thereon, cross by means of a subway, the tracks and right-of-way of Lehigh Valley Railway Company.

From the record it appeared that the commission instituted, upon its own motion, an inquiry into the condition of the crossing in question, and having declared the subway dangerous, ordered the alteration of the same, at a total cost of $82,000, of which the Lehigh Valley Railroad Company was directed to pay $65,000. The Lehigh Valley Railroad Company appealed.

The original appeal was argued October 25, 1922, before the Superior Court, and under date of December 14, 1922, the record was remanded to the Public Service Commission, for the purpose of securing more definite evidence with reference to the width of the highway at the place where the appellant's road crossed it, and also with respect to the location of the piers of the appellant's bridge, in relation to the outside lines of the highway. This supplementary evidence was introduced by the commission in accordance with the order of the Superior Court. Other facts appear by the opinion of the Superior Court and report of former appeal, 80 Pa. Superior Ct. 139.

*Error assigned* was, among others, the order of the commission.

*Ralph J. Baker,* and with him *Karl E. Richards,* for appellant.

*John Fox Weiss,* Assistant Counsel, and with him *Frank M. Hunter,* for Public Service Commission.

OPINION BY LINN, J., December 12, 1923:

Appellant complains of an order of the commission requiring changes in part at its expense, in the Main Street of the Borough of Duryea, in Luzerne County, and in appellant's railway crossing the street overhead.

The order, which will be found in the reporter's statement of the case, was made by the commission in an investigation of its own motion. All interested parties were brought in. A final order was made on November 15, 1921, from which an appeal was taken to this court. It was argued on October 25, 1922, and on December 14, 1922, this court remanded the record to the commission for further investigation as follows:

"It appears desirable from an examination of the record in this case that more definite evidence be furnished with reference to the width of the highway at the place where appellant's road crosses it; and also with respect to the location of the piers of the appellant's bridge in relation to the outside lines of the highway. The record is therefore returned to the commission in order that evidence may be taken bearing on the subject referred to."

The commission then held additional hearings, at which evidence was received from various parties, including appellant. On August 17, 1923, the commission filed its supplemental report with the order now challenged, which, with the exception of the date for completing the work, reaffirms the order of November 15, 1921.

The supplementary evidence taken after the case was remanded in December, 1922, amply supports the order of 1921 in the respect in which supplement may have been deemed desirable. We therefore all agree that there is no merit in appellant's point that the order now under review, is not supported by competent evidence, touching which, we may also say, that in reaching that conclusion, we have excluded from consideration the record from the road docket of Luzerne County for the year 1790, and the records from and evidence based on the books of the Pennsylvania Coal Company, which had been objected to by appellant when received below. We do not pass on their relevancy or competency, as we had no difficulty in reaching a conclusion without them.

(1) Main Street in the Borough of Duryea is a county road, much travelled between Scranton and Pittston, and

places beyond each; at the point in question, most of the travel is through, and not local, travel. The railroad was built in 1884, before the borough of Duryea was established; the land was then in Marcy township. A number of witnesses, local residents, who were frequent users of the public road prior to 1884 (and since), testified that the general course of the road had been straight; it was a well established highway when the railroad was constructed; in appellant's first brief, it is called, "the old Wilkes-Barre to Carbondale road." The eastern side of the road was bounded by a steep embankment, perhaps 15 feet high, along which there was a fence separating the road from farmland; on the western side there was a declivity, descending from the level of the road, to the right-of-way of the Lackawanna Railroad; the witnesses differ as to how far apart these lateral boundaries of the road were, but the evidence amply justifies the finding of the commission that it was "at least 33 ft. wide." It would appear from the evidence that the course of the highway—straight, as we have said—and the course of the railroad as proposed, intersected at an acute angle, so that if it had been necessary to carry the two track railway over the road of the width described, for the full stretch of that intersection, a very long viaduct would have been required. Doubtless to avoid that, appellant built its western bridge abutment, as the witnesses say, across the public road. Back of that abutment, appellant made a solid embankment to carry its tracks, covering all of the public highway so to be occupied by the railroad. That of course required that some accommodation be furnished for highway travel. To meet that necessity appellant relocated as much of the public road as it deemed sufficient, to the east of the part of the road required for its railway embankment, which relocation took the public road by a curve under the railroad tracks to a point in the former line of the road on the other side of the railroad. Instead of constructing the abutments so that the road between

then was as wide as the highway which the railroad crossed, the abutments were constructed much closer together, only 19.8 feet apart. The curve in the street resembles the letter S where the street has a grade of 5 or 6%. About 1893 the Wilkes-Barre Railway Company put a street railway track in the public road. The street cars move at ten minute intervals, and the ends of the cars overhang considerably in making the curves. Appellant's narrowing of the road and introduction of the curves produced the serious element of danger now menacing highway travel.

(2) The order of the commission provides for a change according to plans which have been approved by appellant's engineers. Luzerne County, at its own expense, estimated in excess of $14,000, is ordered to do a part of the work. The Wilkes-Barre Railway Company, at its expense, estimated to be $2,000, must reconstruct its tracks, and, in addition, it is ordered to pay to appellant, $15,000, to apply on the cost of the work required to be done by appellant. The Borough of Duryea is required to pay damages for land appropriated, as well as to pay $2,000 to Luzerne County on account of the work. Provision is made for maintenance in the future. Appellant is directed to do a large part of the work. The estimated cost of the change when the evidence was taken, was $82,000. Crediting appellant with the $15,-000 to be paid by the Wilkes-Barre Railway Company, would seem to require an estimated expenditure by appellant of about $50,000, or roughly, 60% of the total cost of the change.

(3) In 1884 when the railroad was built, appellant, of course, had the right to cross the public road, but it might do so only on terms prescribed by law of which the police power is part. The questions raised by such action were so recently considered by this court (B. & O. R. R. Co. v. Commission, 80 Pa. Superior Ct. 443) that we need add nothing on the subject now. By physically narrowing the highway, appellant did not legally nar-

row it; ".....if any such railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith at their own proper expense, on the most favorable location, and in as perfect a manner as the original road......" sec. 13, of the railroad act of 1849, P. L. 79, 85. The commission had authority in this proceeding to require appellant to contribute to the change proposed as provided in the order Art. V, sec. 12, of the Public Service Company law as amended July 17, 1917, P. L. 1025: Lancaster Co. v. Pub. Ser. Com. 77 Pa. Superior Ct. 495, 500, etc.; B. & O. R. R. Co. v. Com., supra; Erie R. R. Co. v. Pub. Ser. Com., 76 Pa. Superior Ct. 170, and 271 Pa. 409, 412.

We have examined the record in the light of the suggestions in the brief that appellant was deprived of some right under a contract, and also of due process, but we can find nothing indicating the slightest basis for either position.

The appeal is dismissed at the cost of appellant.