### ILLINOIS CENT. R. CO. v. LEE.
### No. 14682.

United States Court of Appeals,
Fifth Circuit.
May 6, 1954.

Semmes Luckett and Roberson, Luckett & Roberson, Clarksdale, Miss., (Byrd, Wise & Smith, Jackson, Miss., John W. Freels, and Joseph H. Wright, Chicago, Ill., of counsel), for appellant.

Geo. F. Maynard, Jr., and Maynard, FitzGerald & Maynard, Clarksdale, Miss., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for damages to a grain combine which while stalled on a private crossing was struck by one of defendant's passenger trains.

The claims were: (1) that, due to the negligence of the defendant, the crossing and approaches thereto were permitted to be in an unsafe and dangerous condition, and because thereof the combine became stalled; (2) that the defendant was negligent in failing to keep a proper lookout to detect the presence of persons or vehicles lawfully using the crossing; and (3) that the defend-ant's employees were negligent in failing to heed the warning signals given by plaintiff's agent and employee, Peacock. Knowing that a passenger train would be due and finding that he would be unable to get the combine off the track, he walked and ran to a point some two thousand feet or more from the crossing and there, in ample time to prevent the collision, gave the engineer danger and warning signals which, if heeded, would have resulted in his seeing the combine's position of peril in ample time to avoid injury to it.

The defenses were: a denial of all the charges of negligence; a denial that Peacock gave danger signals; and allegations that the engineer was keeping a lookout and saw the signals, which were, and appeared to him to be, "high ball" signals indicating a clear track ahead; and further that if he had interpreted them as danger signals he could have done no more than he did, for almost immediately after he saw Peacock he took action to slow down the fast running train and almost succeeded in doing so before it hit the combine.

On the issues thus joined, the cause proceeded to trial before a jury. The evidence,[1] all in, and defendant's motion for a directed verdict denied, the court, instructing the jury that the defendant was not liable for the condition of the crossing or the stalling of the combine thereon, submitted the cause to the jury on the single question, whether the defendant's employees used due diligence after they actually knew, or should have known by the exercise of reasonable diligence, that the vehicle was in a position of peril and did all that they reasonably could to keep from hitting it.

There was a verdict and judgment for plaintiff, and defendant is here

---

1. This showed, as plaintiff had pleaded, the stalling of the combine, and the attempts of Peacock to flag down the train at a sufficient distance and under circumstances such that if the engineer who admittedly saw Peacock signalling had heeded them he could and would have avoided the collision. It also showed that Peacock was an experienced railroad fireman, and, as such, knew how to signal danger, and further that, though the engineer testified he gave the wrong signals, he also testified that because of them he checked his speed nearly but not quite enough to avoid the collision, so nearly in fact that the engine ran only thirty feet beyond the crossing.

**498**

upon a single specification of error, that the court erred in denying its request for a directed verdict. For the reasons hereafter briefly stated, we do not think so.

On the contrary, we think the evidence almost, if not quite, compelled a verdict for plaintiff. The plaintiff's evidence shows that defendant was given clear warning by an experienced railroad man of danger ahead, in ample time, if the engineer had heeded it, to slow the train down sufficiently to avoid the collision. To this testimony the defendant, not in any way impeaching Peacock's, opposes only the engineer's contradictory and inconsistent testimony. Admitting that he saw the signals being given but claiming that he thought they were not "warning" but "clear ahead" signals, he yet testifies that he was sufficiently alerted and warned by them that something might be amiss, to start slowing down in time to almost, but not quite, avoid the collision.

■ Granting for the sake of argument that the completely inconsistent and greatly damaging testimony of the engineer, that, though he thought the signals were "clear ahead" signals, he nevertheless, because of them, first slowed down and then brought his fast flying train to a stop almost, but not quite, in time, made an issue of fact against the positive testimony of Peacock, a locomotive fireman for nine years, as to the kind of signals he gave, it certainly did no more than that. The jury, under a charge which is not complained of here, having resolved the issue in plaintiff's favor, the verdict and judgment must stand.

In this view, appellant's attempted classification of plaintiff and his combine as trespassers or licensees on the crossing, and its citation of Mississippi authorities, with respect to the duty it owed plaintiff as such, are beside the mark. This case was tried and submitted to the jury on the single question of fact, was defendant warned of a situation of peril and danger ahead in time to have observed and avoided it if it had used the care required under the circumstances then and there existing, and the jury, answering that it was so warned and that it did not exercise due care, found for plaintiff.

Under applicable authorities from Mississippi,[2] and elsewhere,[3] the judgment was right and is affirmed.

2. Staggs v. Mobile & O. Railroad Co., 77 Miss. 507, 27 So. 597; Alabama Great Southern R. Co. v. Martin, 205 Miss. 851, 39 So.2d 501; Illinois Central R. v. Mann, 137 Miss. 819, 102 So. 853; Alabama & V. Ry. Co. v. Kelly, 126 Miss.

276, 88 So. 707; Gulf & S. I. R. Co. v. Williamson, 162 Miss. 726, 139 So. 601.

3. Southern Railway Co. v. Williams, 243 Ala. 429, 10 So.2d 273; Naugle v. Reading Co., 145 Pa.Super. 341, 21 A.2d 109; 74 C.J.S., Railroads, § 738, page 1383.